**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

|  |  |
|---|---|
| **HOOTERS OF AMERICA, LLC**, a Georgia limited liability company; **HOA FRANCHISING, LLC**, a Delaware limited liability company; **HOA SYSTEMS, LLC**, a Delaware limited liability company; and **HOA RESTAURANT HOLDER, LLC**, a Delaware limited liability company, | Civil Action File No. _____ |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| vs. | |
| **RAISING CANE'S USA, LLC**, a Louisiana limited liability company, | |
| Defendant. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

COME NOW, Hooters of America, LLC, HOA Franchising, LLC, HOA Systems, LLC, and HOA Restaurant Holder, LLC (collectively, "Hooters"), by and through their undersigned counsel, and file this Complaint against Raising Cane's USA, LLC ("Raising Cane's" or "Defendant"), alleging as follows:

**INTRODUCTION**

1.

This is a declaratory judgment action brought by Hooters against Defendant Raising Cane's for: (1) a declaration of non-infringement under 15 U.S.C. § 1114 of Defendant's claimed rights in three federally registered trademarks; (2) a declaration that Hooters does not unfairly compete with Defendant under 15 U.S.C, § 1125(a); (3) a declaration that the three trademarks at

issue are invalid; and (3) cancellation of such marks under 15 U.S.C. § 1064.  As alleged in more detail in this Complaint, Defendant's marks, "Always Fresh. Never Frozen" and "Always Fresh. Never Ever Frozen", are descriptive phrases.  As such they are not entitled to protection under the United States trademark laws.  Since 2008, Hooters has used the descriptive phrases "Always fresh", "Fresh never frozen" or related descriptions in menus and other materials, solely to describe the qualities of the chicken wings sold in Hooters restaurants throughout the country. As a result of the foregoing, Hooters seeks a declaratory judgment that it does not infringe Defendant's marks or unfairly compete with Defendant, and that Defendant's marks are invalid. Accordingly, Hooters further requests cancellation of the marks' federal trademark registrations.

## PARTIES

### 2.

Plaintiff Hooters of America, LLC is a Georgia limited liability company duly organized and existing under the laws of Georgia, with its principal place of business located at 1815 The Exchange SE, Atlanta, Georgia 30339, Cobb County.

### 3.

Plaintiff HOA Franchising, LLC is a Delaware limited liability company duly organized and existing under the laws of Delaware, with its principal place of business located at 1815 The Exchange SE, Atlanta, Georgia 30339, Cobb County.

### 4.

Plaintiff HOA Systems, LLC is a Delaware limited liability company duly organized and existing under the laws of Delaware, with its principal place of business located at 1815 The Exchange SE, Atlanta, Georgia 30339, Cobb County.

5.

Plaintiff HOA Restaurant Holder, LLC is a Delaware limited liability company duly organized and existing under the laws of Delaware, with its principal place of business located at 1815 The Exchange SE, Atlanta, Georgia 30339, Cobb County.

6.

Raising Cane's USA, LLC is a Louisiana limited liability company.  Upon information and belief, Raising Cane's USA operates a restaurant at 1000 West 15th Street, Plano Texas 75075.  Service of process may be made upon Defendant by service of its registered agent, Brad Sanders, at its corporate offices which are located at 6800 Bishop Road, Plano, Texas 75024.

## VENUE AND JURISDICTION

7.

This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. §§ 2201 and 2202.

8.

Defendant is subject to personal jurisdiction in this Court, because Defendant operates its business in this judicial district, and has continuously and systematically transacted business and supplied goods and services directed to consumers residing in this judicial district, including to some extent using the challenged marks at issue in this judicial district.  Furthermore, in all dealings with the United States Patent and Trademark Office relating to the challenged marks at issue, Defendant has asserted that its home office is located in Plano, Texas, within this judicial district.

9.

Defendant has purposefully availed itself of the benefit of this State and judicial district, including operating a fast food restaurant in this judicial district, being registered to do business in this state, and listing its address in filings with the United States Patent and Trademark Office as Plano, Texas, such that maintenance of suit in this judicial district would not violate due process.

10.

Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391, for at least the reason that Defendant is deemed to reside in the judicial district.

## FACTS COMMON TO ALL COUNTS

### Hooter's Descriptive Use of "Fresh Never Frozen"

11.

Hooters of America, LLC, through its affiliates HOA Franchising, LLC, HOA Systems, LLC,  and HOA Restaurant Holder, LLC (collectively "Hooters") is the Atlanta, Georgia based franchisor of approximately 420 iconic Hooters restaurants, located in 42 states and 29 countries. Hooters also owns and operates 190 locations itself.  Hooters advertises and markets its products and services over the internet, in print and in other media, and in the operations of each restaurant Hooters franchises.  There are currently 14 Hooters restaurants in the greater Dallas-Fort Worth metroplex, including restaurants in Plano, Frisco and McKinney.

12.

As the franchisor of Hooters restaurants, Hooters plays an active role in the development of the menu used at Hooters restaurants throughout the world, including the food and beverage offerings and related menu content.

13.

One cornerstone of Hooters' advertising campaign and appeal to its customers is the Hooters' chicken wings, marketed and sold as Hooters' "Officially World Famous Chicken Wings" and including, but not limited to, the "Original Hooters Style Wings".

14.

These Hooters wings consist of fresh chicken wings which are not frozen prior to being sold to Hooters' customers.

15.

As such, at various times in the past Hooters has described its wings on menus using descriptions such as "Fresh, Never Frozen Chicken Wings", "Fresh, Never Frozen" or derivations thereof.  Such descriptors are an integral part of Hooters' advertising.  A sample of menus containing such descriptions of Hooters World Famous Chicken Wings is attached hereto as **Exhibit A**.

16.

Hooters refers to its chicken wings using the description "Fresh never frozen" or derivations thereof for the sole purpose of describing the quality of its chicken wing products to its customers.

17.



Hooters uses these descriptors to notify its customers that the chicken wings Hooters offers are fresh and not frozen, which in Hooters' view distinguishes Hooters from certain competitor restaurants who sell frozen chicken wings.  Hooters does not use the descriptive terms as a brand name for its wings, nor to describe Hooters' broader restaurant services, or in fact any items on Hooters' menu other than the fresh chicken wings.

**Defendant's Marks**

18.

Upon information and belief, Defendant Raising Cane's is the operator and franchisor of a fast food chicken finger restaurant chain.

19.

On June 8, 2007, Defendant filed applications to register ALWAYS FRESH, NEVER

EVER FROZEN and ALWAYS FRESH. NEVER FROZEN as service marks on the Principal

Register for "restaurant services".  The USPTO refused registration of these marks on the

Principal Register under Section 2(e)(1), stating that the marks were merely descriptive of the

services rendered.  In response, Defendant requested that the USPTO enter claims of acquired

distinctiveness for both service marks under Section 2(f), citing use of the marks since at least

2001.   Both ALWAYS FRESH, NEVER EVER FROZEN (Reg. No. 3,769,382) and ALWAYS

FRESH. NEVER FROZEN (Reg. No. 3,769,684) were then registered on the Principal Register

on the basis of acquired distinctiveness on April 6, 2010, and are therefore eligible to become

incontestable as early as April 6, 2015.

20.

On August 13, 2009, Defendant acquired from Slim Chicken's Holdings, LLC the

registration for ALWAYS FRESH. NEVER FROZEN (Reg. No. 3,342,290), which was

registered on the Supplemental Register of the U.S. Patent and Trademark Office (USPTO) on

November 20, 2007.

21.

U.S. Registration No. 3,769,684 for the mark ALWAYS FRESH. NEVER FROZEN,

U.S. Registration No. 3,769,682 for the mark ALWAYS FRESH. NEVER EVER FROZEN, and

U.S. Registration No. 3,342,290 for the mark ALWAYS FRESH. NEVER FROZEN are

collectively referred to herein as the "Registrations", and the issuing marks are collectively

referred to herein as the "Marks":

| Mark | Reg. No. | Registry | Goods/Services |
|------|----------|----------|----------------|
| ALWAYS       FRESH.       NEVER FROZEN | 3,769,684 | Principal | Restaurant services |
| ALWAYS  FRESH. NEVER EVER | 3,769,682 | Principal | Restaurant |

| FROZEN | | | services |
|---|---|---|---|
| ALWAYS    FRESH.    NEVER FROZEN | 3,342,290 | Supplemental | Restaurant services |

Copies of Defendant's Registrations are attached hereto as **Exhibit B**.

22.

Registration under Section 2(f) permits marks that are descriptive, but have acquired distinctiveness through continuous use in commerce, to be registered on the Principal Register.  For procedural purposes, a claim of distinctiveness under §2(f), whether made in the application as filed or in a subsequent amendment, may be construed as conceding that the matter to which it pertains is not inherently distinctive and, thus, not registrable on the Principal Register absent proof of acquired distinctiveness.  Trademark Manual of Examining Procedure [TMEP], § 1212.02(b).

**Defendant's Threats to Hooters**

23.

On September 10, 2013, counsel for Raising Cane's notified Hooters that its use of the descriptive phrase "Fresh Never Frozen" infringes the Marks and constitutes unfair competition in violation of 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

24.

Through its counsel, Raising Cane's alleged that it has used the Marks for restaurant services since 2001 and has built up significant goodwill in the Marks, and that consumers recognize and "associate [the Marks] with Raising Cane's and its restaurant services, including its sale of chicken fingers."

25.

Raising Cane's further alleged that Hooters' use of "Fresh Never Frozen" may cause a likelihood of confusion, identifying various factors supporting its position and asserting that Hooters "has been on constructive notice of Raising Cane's rights."

26.

 Raising Cane's demanded that Hooters: (1) discontinue all use of the "fresh never frozen"; (2) agree not to use such phrase in the future; and (3) destroy any and all marketing and advertising bearing the phrase.

27.

On September 25, 2013, trademark counsel for Hooters responded that Hooters used the phrase "fresh never frozen" in its ordinary descriptive sense to describe true qualities of Hooters' chicken wings and, as such, the use did not constitute a violation of the Lanham Act.  Counsel further disputed that there was any likelihood of confusion between the Marks and Hooters' use of "fresh never frozen".

28.

Counsel for Raising Cane's subsequently inquired as to whether Hooters' would be phasing out its use of "fresh never frozen".  Although neither Hooters nor its counsel responded to this request, Raising Cane's ultimately concluded that "it appears [Hooters] has complied with our requests", and indicated it would not take further action.  However, Raising Cane's noted throughout the course of correspondence, including its final letter in May 2014, that Raising Cane's "reserves the right to take action in the future" and/or that the correspondence "is without prejudice to the rights of our client."  Subsequently, Hooters requested a covenant not to sue

from Raising Cane's relating to its use of "fresh never frozen" and related terms intended to communicate to the consumer that Hooters' food products are always fresh and are never frozen. Hooters is informed and states that upon information and belief, Raising Cane's is unwilling to give Hooters a covenant not to sue.

29.

The "fresh never frozen" descriptive phrase and derivations thereof are an integral part of Hooters' menu, accurately defining qualities of its world famous chicken wings, and Hooters is presently using these descriptions on menus throughout the country as of the date of this Complaint for Declaratory Judgment.  Although Hooters may have temporarily stopped using such phrases in connection with a specific promotion in 2013, Hooters presently includes the description in menus in its restaurants, and intends to do so for the foreseeable future.

30.

Hooters' use of the descriptive term "fresh never frozen" and derivations thereof on its menus to describe the qualities of its world famous chicken wings does not create a likelihood of confusion.  Specifically, Hooters' use is not likely to cause confusion, mistake, or to deceive consumers into believing: (1) that Defendant is affiliated, connected, or associated with Hooters; (2) that Defendant is the source of Hooters' chicken wings; or (3) that Defendant approves of or has licensed the use of the Marks to Hooters.  In point of fact, despite the widespread use of "fresh never frozen", "always fresh" and "always fresh never frozen" on its menus and in other related contexts to describe qualities of its chicken wings, Hooters is unaware of any anecdotal evidence of consumer confusion.  The reasons for this are readily apparent, as both Hooters and the Defendant have their own unique and prominently identifying trade names, logos and color

schemes which are readily distinguishable each from the other.  No reasonable consumer seeing "fresh never frozen" or a derivative phrase used to describe Hooters' chicken wings on menus or other literature draped in Hooters' signature orange background with its distinctive trademarks and logos would ever be confused into believing that the wings in question are a product endorsed or otherwise affiliated with a different restaurant chain.

31.

Hooters has never attempted to profit (nor has it profited) on any claimed reputation or goodwill Defendants claims in the Registrations and Marks.  To the contrary, Hooters has sought to accurately describe the nature and quality of the chicken offered to customers in the Hooters restaurants.

32.

The action by Defendant demanding that Hooters cease all use of the Marks and reserving all rights to sue Hooters, should Hooters continue to use the descriptive "fresh never frozen" in its advertising, in view of the totality of facts and circumstances, has created an imminent controversy between the parties regarding Hooters' right to use the phrase "fresh never frozen" or any derivative or similarly worded phrase on its menu.  Such an imminent controversy now warrants resolution by declaratory judgment.

33.

Declaratory relief will serve to resolve a real and immediate controversy as to Defendant's legal rights with respect to the phrases "fresh never frozen", "always fresh, never frozen" and derivatives thereof, the Registrations and the Marks, including Hooters' legal rights to describe its chicken wings using these descriptive phrases.

34.

Absent a declaration of such rights, Hooters will suffer imminent injury, as it is now using the allegedly infringing descriptions on menus throughout the country, and considering increasing the scope of its usage to also describe the qualities of its hamburger patties.  As such, Hooters is now at risk of being sued for infringement and unfair competition by Defendant over use of the Marks, including a risk of damages and a potential injunction which could force Hooters at considerable expense to change menus in its restaurants and advertising and marketing materials in each of its geographic regions.  The requested declaratory relief will enable Hooters to avoid such injury.

35.

Furthermore, within a matter of days of the filing of this suit, two of the Registrations that Raising Cane's has asserted against Hooters would otherwise become eligible to become incontestable, within the meaning of 15 U.S.C. § 1065, on April 6, 2015: (1); U.S. Registration No. 3,769,684 (ALWAYS FRESH. NEVER FROZEN mark); and (2) U.S. Registration No. 3,769,682 (ALWAYS FRESH. NEVER EVER FROZEN mark).

36.

Should such registrations become incontestable, the registrations will become conclusive evidence of the validity of the registered mark and its registration, of the registrant's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce, subject to certain limited defenses and exceptions.  A registration that is incontestable is immune to challenge on certain grounds, including that the registered mark is merely descriptive and lacks secondary meaning. *See Park n' Fly, Inc. v. Dollar Park n' Fly, Inc.*, 469 U.S. 189 (1985).

37.

If the '684 and '682 Registrations become incontestable, Hooters will suffer irreparable harm and injury as it will be hampered in its ability to challenge the validity of the Registrations and otherwise defend against any future infringement and unfair competition claims asserted by Raising Cane's.

38.

For the foregoing reasons, an actual controversy exists between the parties as to whether Hooters infringes Defendant's Marks, whether the Marks are valid, and whether the Registrations should be canceled. The Marks and Registrations are merely descriptive and do not distinctly identify the Defendant's goods in interstate commerce, without acquired secondary meaning identifying them with the Defendant.  For example, a Google search of "Always fresh, never frozen" yields the following results, none of which are affiliated with the Defendant:



In short, consumers do not associate the expression "always fresh, never frozen", or derivatives

thereof, with the Defendant or its goods.

## COUNT I
### Declaration that Hooters Does Not Infringe (15 U.S.C. § 1114)

39.

Hooters incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 38 as if fully set forth herein.

40.

A real and actual controversy exists between the parties as to the parties' legal rights to the phrases "fresh never frozen", "always fresh never frozen" or derivatives thereof.  Among other things, Hooters is justifiably concerned about the imminent threat of a recurring demand by Defendant to cease and desist from the use of these phrases in view of the prior statements of Defendant combined with the looming opportunity for Defendant to file the paperwork to make its mark incontestable and thus more fit for enforcement against Hooters than it was when the parties last communicated about this issue.

41.

Hooters and Defendant have adverse interests in the subject matter of the dispute.

42.

Hooters seeks a declaratory judgment that its past use and continued use of "fresh never frozen" and derivatives thereof is merely descriptive usage, and is not intended or likely to cause confusion, mistake or deception as between the source, association or affiliation of the parties'

products, services or businesses under the Lanham Act, 15 U.S.C. § 1114.  Hooters seeks a

further declaratory judgment that its past use and continued use of "fresh never frozen" and

derivatives thereof in the context of its own products represents fair use of these phrases, which,

when used, are fair and appropriate to describe the qualities of Hooters goods, and that Hooters

has not done anything that suggests affiliation, sponsorship, or endorsement by Defendant.

43.

Hooters further seeks a declaratory judgment that its past use and continued use of "fresh

never frozen" and derivatives thereof does not infringe, and at all times has not infringed, any

existing and valid U.S. trademark registration owned by Defendant under the Lanham Act, 15

U.S.C. § 1114, including but not limited to the following Registrations:

- Registration No. 3,769,684 for the mark ALWAYS FRESH. NEVER FROZEN;

- Registration No. 3,769,682 for the mark ALWAYS FRESH. NEVER EVER FROZEN; and

- Registration No. 3,342,290 for the mark ALWAYS FRESH. NEVER FROZEN.

## **COUNT II**
**Declaration that Hooters Does Not Unfairly Compete (15 U.S.C. § 1125(a))**

44.

Hooters incorporates by reference and re-alleges each and every allegation set forth

above in paragraphs 1 through 43 as if fully set forth herein.

45.

A real and actual controversy exists between the parties as to the parties' legal rights to

the phrase "fresh never frozen" and derivatives thereof.   Among other things, Hooters is justifiably concerned about the imminent threat of a recurring demand by Defendant to cease and desist from the use of these phrases in view of the prior statements of Defendant combined with the looming opportunity for Defendant to file the paperwork to make its mark incontestable and thus more fit for enforcement against Hooters than it was when the parties last communicated about this issue.

46.

Hooters and Defendant have adverse interests in the subject matter of the dispute.

47.

Hooters seeks a declaratory judgment that its past use and continued use of "fresh never frozen" and derivatives thereof is not intended or likely to cause confusion, mistake or deception as between the source, association or affiliation of the parties' products, services or businesses, and does not unfairly compete with Defendant under the Lanham Act, 15 U.S.C. § 1125(a).

48.

Hooters further seeks a declaratory judgment that its past use and continued use of "fresh never frozen" and derivatives thereof does not infringe and has not infringed any existing and valid trademarks owned by Defendant, and has not caused any injury to Defendant under the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III
### Declaration of Trademark Invalidity

49.

Hooters incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 48 as if fully set forth herein.

50.

Defendant claims to be the owner of the Registrations and Marks, and that such Registrations and Marks are valid and enforceable.

51.

Defendant further alleges that Hooters infringes the Marks and has engaged in unfair competition in connection with such Marks.

52.

Hooters contends that the Registrations and Marks are invalid in that they are merely descriptive, and incapable of serving as source identifiers of the Defendant's goods.  Moreover, this was so at the time of their registration.  Moreover, prior to the issuance of the Registrations, none of the registered Marks had acquired a secondary meaning in the sense that each Mark's primary significance was that of a source indicator of goods emanating from registrant.  The Registrations and Marks convey a commercial impression that is merely descriptive to a reasonable consumer, consisting of the qualities, ingredients, or characteristics of the goods or services related to the mark.  Thus, an immediate, real and justiciable controversy now exists between the parties with respect to Defendant's Registrations and Marks.  Among other things, Hooters is justifiably concerned about the imminent threat of a recurring demand by Defendant to cease and desist from the use of these phrases in view of the prior statements of Defendant combined with the looming opportunity for Defendant to file the paperwork to make its mark incontestable and thus more fit for enforcement against Hooters than it was when the parties last communicated about this issue.

53.

Hooters seeks a declaration that the Registrations and Marks are invalid.

## COUNT IV
### Cancellation of Federal Trademark Registrations

54.

Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 53 as if fully set forth herein.

55.

This Count is for cancellation of the Registrations under 15 U.S.C. § 1604.  Hooters contends that the Registrations are invalid in that they are merely descriptive, and incapable of serving as source identifiers of the Defendant's goods.  The Registrations convey a commercial impression that is merely descriptive to a reasonable consumer, consisting of the qualities, ingredients, or characteristics of the goods or services related to the mark.  Moreover, prior to the issuance of the Registrations, none of the registered Marks had acquired a secondary meaning in the sense that each Mark's primary significance was that of a source indicator of goods emanating from registrant.

56.

Moreover, Hooters is informed and believes that Defendant failed to provide sufficient proof of its substantially exclusive and continuous use in support of its claims of acquired distinctiveness in its submissions to the U.S. Patent and Trademark Office used to obtain registration on the supplemental register.  This is so because of, among other things, Defendant's actual knowledge of a conflicting use of an identical service mark since 2003 for restaurant

services by Slim Chicken's Holdings, LLC.

57.

Hooters will be damaged if the Registrations are not canceled, as outlined above.  If Defendant enforces its Marks against Hooters' materials such as menus, as previously threatened, Hooters will continue to be damaged by the Marks.  Among other things, Hooters is justifiably concerned about the imminent threat of a recurring demand by Defendant to cease and desist from the use of these phrases in view of the prior statements of Defendant combined with the looming opportunity for Defendant to file the paperwork to make its mark incontestable and thus more fit for enforcement against Hooters than it was when the parties last communicated about this issue.

58.

If Defendant is permitted to retain the Registrations sought to be cancelled, and therefore the prima facie exclusive right to use in commerce the Marks, Hooters will suffer a great detriment.

59.

Hooters seeks a declaration cancelling the Registrations.

**JURY DEMAND**

60.

Hooters demands a jury trial on all issues so triable.

**PRAYER**

WHEREFORE, Hooters prays for a declaratory judgment that:

A.      Hooters' past, present and continued use of "fresh never frozen", "always fresh

never frozen", "always fresh", and derivatives thereof in connection with its business does not and will not infringe any existing and valid trademark right of Defendant under the Lanham Act, 15 U.S.C. § 1114;

B.      Hooters' past, present and continued use of "fresh never frozen", "always fresh never frozen", "always fresh", and derivatives thereof in connection with its business is not likely to cause, and has not caused, confusion, mistake or deception as to the affiliation, connection or association of Defendant with Hooters, its goods or services, or as to the origin, sponsorship or approval by Defendant of Hooters, its goods or services under the Lanham Act, 15 U.S.C. § 1125(a);

C.      Defendant, its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from instituting, prosecuting or threatening any action against Hooters, its affiliates or anyone in privity with it, in connection with the Registrations and/or Hooters' use of "fresh never frozen", "always fresh never frozen", "always fresh", and derivatives thereof in connection with its business;

D.      The Court enter judgment that the following trademark registrations are invalid pursuant to 15 U.S.C. § 1119:

- Registration No. 3,769,684 for the mark ALWAYS FRESH. NEVER FROZEN;

- Registration No. 3,769,682 for the mark ALWAYS FRESH. NEVER EVER FROZEN; and

- Registration No. 3,342,290 for the mark ALWAYS FRESH. NEVER

FROZEN.

E.      The Court enter judgment that the following trademark registrations are canceled

under 15 U.S.C. § 1064:

- Registration No. 3,769,684 for the mark ALWAYS FRESH. NEVER

    FROZEN;

- Registration No. 3,769,682 for the mark ALWAYS FRESH. NEVER EVER

    FROZEN; and

- Registration No. 3,342,290 for the mark ALWAYS FRESH. NEVER

    FROZEN.

F.      Such other relief as the Court may deem just and proper.

This 7th day of April, 2015.

_/s/_ Elizabeth L. DeRieux
S. Calvin Capshaw
Texas State Bar No. 03783900
E-Mail:  ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
Texas State Bar No. 05770585
E-Mail: ederieux@capshawlaw.com
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone:  (903) 236-9800
Facsimile:  (903) 236-8787

Steven G. Hill
Georgia Bar No. 354658
*Admitted to practice, E.D. Texas*
E-Mail:  sgh@hkw-law.com
HILL, KERTSCHER & WHARTON, LLP
3350 Riverwood Parkway, Suite 800
Atlanta, Georgia  30339
Telephone: (770) 953-0995
Facsimile: (770) 953-1358

*Attorneys for Plaintiffs Hooters of America,
LLC, Hooters Franchising, LLC, HOA
Systems, LLC and HOA Restaurant Holder,
LLC*